UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THE AMERICAN INSURANCE COMPANY, et al., | ) ) ) |
| Plaintiffs | ) ) |
| vs. | ) CAUSE NO. 3:12-CV-122 RLM ) |
| LIBERTY HOMES, INC., | ) ) ) |
| Defendant | ) |

OPINION and ORDER

This cause is before the court on the motion of The American Insurance Company and Associated Indemnity Corporation (collectively, Fireman's Fund) for summary judgment on its claims against Liberty Homes, Inc. and on the claims of Liberty Homes' counterclaim against Fireman's Fund. A hearing was held on the motion on July 23, and the court took the matter under advisement. Based on its consideration of the parties' briefs and arguments, the court concludes that the motion must be granted.

FACTS

Fireman's Fund seeks recovery of more than $148,000 for past due, under-funded reserves for a worker's compensation claim made by Travis Nichols under a worker's compensation insurance policy issued to Liberty Homes, a

manufacturer and seller of modular homes.[1] In its counterclaim, Liberty Homes seeks a refund of the reserves it has paid for Mr. Nichols' claim based on allegations that Fireman's Fund breached the insurance contract by failing to properly defend the Nichols claim and breached its duty of good faith and fair dealing in the pursuit and/or defense of the Nichols claim.

The claim at issue relates to a back injury Travis Nichols suffered in April 1997, while employed at Waverlee Homes, a Liberty Homes subsidiary. Mr. Nichols' claim was covered by insurance policy KWC 80721434 ("96-97 Program"), issued by The American Insurance Company to Liberty Homes. *See* Pltfs. Exhs. 3 (Policy), 4 (Declaration), 5 (Deductible Payment Schedule), 6 (Security Agreement). The parties eventually agreed that Mr. Nichols would release Liberty Homes from future liability on his claim in exchange for Liberty Homes' agreement to pay a lump sum to Mr. Nichols for his medical expenses and to pay all of his injury-related prescription medications for the rest of his life. An Alabama state court approved and entered the parties' settlement agreement in October 1999.

Liberty Homes reports that around 2004, its officials became concerned about Fireman's Fund's handling of the Nichols claim, specifically relating to the frequency of Fireman's Fund's inquiries into Mr. Nichols' medications and Fireman's Fund's requirement that Liberty Homes fully fund the reserve held for

---

[1] Fireman's Fund initially sought recovery for a second worker's compensation claim by Stephan Baughman, a former Liberty Homes employee, but Fireman's Fund reported in its supplemental memorandum that the Baughman claim had been settled and no amounts remain due and owing by Liberty Homes. At the summary judgment hearing, counsel for the plaintiffs confirmed that the Baughman claim was closed and no longer at issue in this litigation.

Mr. Nichols (which Fireman's Fund then estimated to be $7,000 per year for 26 years). Marc Dosman, Liberty Homes' chief financial officer, wrote to Fireman's Fund in August 2005 expressing his concern that Fireman's Fund's handling of Mr. Nichols' claim had allowed Mr. Nichols "to form a dependency on the meds" that was being supported by the requirement that Liberty Homes fund the reserve for Mr. Nichols for 26 years. Pltfs. Exh. 12. Mr. Dosman related that Liberty Homes believed that their claims weren't receiving "active management from Fireman's Fund . . . that sub-standard management of the claims has [led] to excessive and continued annual billing adjustments. . . . [and] the reserve setting process, which drives the need for Fireman's Fund's requests for more payments, is not properly managed." Pltfs' Exh. 12. Mr. Dosman concluded that, "given these circumstances," Liberty Homes wouldn't be paying the outstanding invoice for 2005. Pltfs. Exh. 12.

In response to Mr. Dosman's concerns, Fireman's Fund Service Consultant Scott Kelley explained that the requirement for Liberty Homes to fully fund the reserve was necessary because the settlement agreement in Mr. Nichols' state case required that the costs of prescription medications be paid for his lifetime. Mr. Kelley also informed Mr. Dosman that "[w]hile hindsight is always clear, we feel [Fireman's Fund's] claims management and adjusting has [been] consistent throughout the 18 years and 3706 claims we have handled for Liberty Homes." Pltfs. Exh. 16.

Liberty Homes paid the 2005 invoice and other invoices issued by Fireman's Fund through 2008, but hasn't paid the invoices tendered to it for 2009, 2010, 2011, or 2012. Fireman's Fund maintains Liberty Homes has breached the insurance contract by non-payment of those invoices and seeks recovery in the total amount of $148,908. Liberty Homes has counterclaimed against Fireman's Fund for breach of contract and breach of the duty of good faith and fair dealing and seeks a refund of the amounts paid into the reserve fund. Fireman's Fund has moved for summary judgment on the claims of the complaint and the counterclaim. California law governs the applicable insurance contract, and the court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. at 255. The existence of an alleged factual dispute, by itself, will not defeat

a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* FED. R. CIV. P. 56(e)(2). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." Hastings Mut. Ins. Co. v. LaFollette, No. 1:07-cv-1085, 2009 WL 348769, at *2 (S.D. Ind. Feb. 6, 2009); *see also* Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" *(quoting* Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

## DISCUSSION

### *Complaint*

Fireman's Fund alleges that Liberty Homes breached the parties' contract by failing to make the required payments under the 96-97 Program. Fireman's Fund relies on the language of the contract's Deductible Payment Schedule that requires Liberty Homes to pay "incurred losses," defined as "all amounts [Fireman's Fund] pay[s] or estimate[s] [it] will pay for losses under the Subject

5

Policy." *See* Pltfs. Exh. 5, ¶ E; Deft. Exh. C, ¶ E. Fireman's Fund says its collection of reserve funds for Mr. Nichols' claim enables the company to pay a claim long into the future, even if Liberty Homes becomes insolvent. Fireman's Fund notes that Liberty Homes is in default under the Security Agreement if it "fail[s] to pay any obligation to the company or any company affiliate when due." Pltfs. Exh. 6, p. 6, ¶ IX(3). Fireman's Fund says that because Liberty Homes doesn't dispute that it hasn't paid any invoices since its last payment in 2008, Liberty Homes' breach of contract entitles Fireman's Fund to recover damages, pre-judgment interest, fees, and costs.

Liberty Homes responds that summary judgment is improper because the terms of the Deductible Payment Schedule are ambiguous. Liberty Homes maintains that no provision of the contract requires it to pay reserves for the potential lifetime of a worker's compensation claimant. According to Liberty Homes, "it is reasonable to understand that the terms of the Deductible Payment Schedule did not require [Liberty Homes] to fund a reserve for the entire expected lifetime of a worker's compensation claimant." Resp., at 10.

"Under California law, interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. When interpreting an insurance policy, courts must consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation." In re Conseco Life Ins. Co. Life Trend Ins. Marketing and Sales Practice Litigation, 920 F. Supp. 2d 1050, 1060 (N.D. Cal. 2013) (internal citations and quotations omitted). "[A]n

6

insurance policy provision is ambiguous when it is capable of two or more constructions both of which are reasonable. Nonetheless, ambiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms." Esparza v. Burlington Ins. Co., 866 F. Supp. 2d 1185, 1194 (E.D. Cal. 2011) (internal citations and quotations omitted). "In the insurance context, . . . ambiguities are generally resolved in favor of coverage . . . and the courts are to 'generally interpret the coverage clauses of insurance policies broadly, protecting objectively reasonable expectations of the insured.'" In re K F Dairies, Inc. & Affiliates, 224 F.3d 922, 926 (9th Cir. 2000) (*quoting* AIU Ins. Co. v. Superior Court of Santa Clara County, 799 P.2d 1253, 1264 (Cal. 1990)).

The policy defines "incurred losses" as "all amounts" Fireman's Fund pays or estimates it will pay for losses under the policy. *See* Pltfs. Exh. 5, ¶ E; Deft. Exh. C, ¶ E. Although, as Liberty Homes claims, that provision doesn't specifically require that reserve amounts be paid for the lifetime of a worker's compensation claimant, here, an Alabama court judgment requires just that: Liberty Homes must pay Mr. Nichols' prescription drug costs for his lifetime. Thus, interpretation of that contract provision in the context of this case convinces the court that the terms aren't ambiguous. *See* Gaylord v. Nationwide Mut. Ins. Co., 776 F. Supp. 2d 1101, 1115 (E.D. Cal. 2011) ("Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.").

Liberty Homes argues in the alternative that if the contract terms aren't ambiguous, summary judgment is still improper because the reserve amounts it has paid "should easily provide for [Mr.] Nichols' drug needs for approximately 4.5 years." Resp., at 11. Defense counsel reiterated at the summary judgment hearing that Liberty Homes believes the current reserve fund – equal to 4.5 years of prescription expenses – is enough. Liberty Homes hasn't cited to any contract provision that could be read as allowing it to determine what a sufficient reserve fund amount would be or to decide how much it wants to pay into the reserve fund for a claim that, under the terms of the Alabama judgment, must be paid for Mr. Nichols' lifetime. Fireman's Fund maintains that funding for only 4.5 years is insufficient to cover Mr. Nichols' claim because "Liberty's failure to fund 18 years worth of payments would expose Fireman's Fund to the risk that Liberty could become insolvent and unable to pay Fireman's Fund while Fireman's Fund continues to pay for Mr. Nichols' medications for the remainder of his life." Reply, at 3-4. Liberty Homes' preference to pay less into the reserve fund for Mr. Nichols' claim doesn't raise a genuine issue of material fact precluding summary judgment.

The elements of a breach of contract claim in California are the existence of a contract, plaintiff's performance, breach by the defendant, and damages resulting from the breach. Parino v. BidRack, Inc., 838 F. Supp. 2d 900, 907-908 (N.D. Cal. 2011); Oasis W. Realty, LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011). Fireman's Fund has established the elements of its breach of contract claim – the agreement entered in the Alabama state court action proves Liberty

8

Homes' obligation to pay Mr. Nichols' prescription expenses and the insurance contract evidences that Fireman's Fund can determine the amount that needs to be paid by Liberty Homes for Mr. Nichols' current and future prescription medications. That Liberty Homes doesn't agree with the amount of reserves Fireman's Fund has determined to be necessary doesn't excuse its non-payment or create a genuine issue of material fact precluding summary judgment. Fireman's Fund is entitled to summary judgment on the claims of its complaint.

*Counterclaim*

Liberty Homes argues with respect to Fireman's Fund's request for summary judgment on the counterclaim that a genuine issue exists as to whether it owes any money to Fireman's Fund based on Fireman's Fund mismanagement of Mr. Nichols' claim: "It is due to this mismanagement, whether negligent or purposeful, that Liberty asserts no further monies are presently owed to Fireman's Fund." Resp., at 13. Liberty Homes claims, too, that issues of fact exist as to whether Fireman's Fund's actions (or inactions) in its handling of the Nichols claim amount to a breach of contract and a breach of the duty of good faith and fair dealing. According to Liberty Homes, since 2005 it has expressed its concerns to Fireman's Fund about the amount of monies being required for the reserve fund and about Fireman's Fund's "failure to follow up on [Mr.] Nichols' need for the many prescription medications he was taking." Resp., at 13. Liberty Homes claims the evidence shows that (1) Fireman's Fund failed to investigate and determine if

Mr. Nichols was actually taking the medications prescribed to him, if the prescribed medications were appropriate, and if the expenses incurred were necessary; (2) Liberty Homes continued to raise the issue with Fireman's Fund of whether adequate surveillance of Mr. Nichols was being conducted to determine if he was "exacerbating his symptoms;" (3) Mr. Nichols was able to continue to receive certain controlled substances without being drug tested annually; (4) Fireman's Fund failed to determine if the prescribed medications were related to Mr. Nichols' covered injury; and (5) Fireman's Fund failed to meet its obligations under the contract "because no reasonable attempt to resolve the matter has been made since 1999." Resp., at 13-14. In support, Liberty Homes points to statements made by Edward Hussey, the company's vice president, and Marc Dosman, its CFO, in emails, letters, and at their depositions that they expressed their many concerns to Fireman's Fund about its handling of the Nichols claim.

Fireman's Fund disputes Liberty Homes' claim that it mishandled the Nichols claim. Fireman's Fund presented the following evidence chronicling the actions it took on that claim: adjustors' notes showing that adjustors contacted Mr. Nichols' doctor to get updated lists of Mr. Nichols' medications, spoke with Mr. Nichols about his medications, corresponded with Mr. Nichols about possible settlement, arranged for an independent pain specialist to examine Mr. Nichols, and kept in contact with Liberty Homes personnel, *see* Pltfs. Exh. 48, Connor Dec.; reports from Global Options, Fraud and SIU Services, to Fireman's Fund relating to activity investigations of Mr. Nichols undertaken by Global Options, *see*

10

Pltfs. Exhs. 51 (dated Nov. 24, 2008) and 53 (dated Dec. 18, 2009); and reports from Keith Morrow, Mr. Nichols' personal physician, and pain specialist Marion Sovic that Mr. Nichols' pain medications were appropriate and related to his 1997 injury. *See* Pltfs. Exhs. 13, 33, 48, 56, 57. Fireman's Fund also points to the report and the deposition testimony of Doug McCoy, president of McCoy Consulting, about his review of Fireman's Fund's handling of the Nichols claim, *see* Pltfs. Exhs. 58 (McCoy Report) and 61 (McCoy Dep.), and his conclusion that Fireman's Fund had handled the Nichols claim reasonably and in good faith. *See* Pltfs. Exh. 58, at 2-9 (McCoy Rept.); Pltfs. Exh. 61, at 123 (McCoy Dep.).

To establish a breach of the implied covenant of good faith and fair dealing, a party must demonstrate that "(1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001). "The insurer's conduct must demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence, but rather by a conscious and deliberate act." Payaslyan v. Allstate Ins. Co., No. CV12-8651, 2013 WL 2128325, at *5 (C.D. Cal May 2, 2013) (internal quotation and citation omitted).

Fireman's Fund points to specific evidence that it investigated settlement of the Nichols claim, obtained an independent medical examination of Mr. Nichols, had Mr. Nichols followed to confirm his daily activities, and sought confirmation from his doctor about his need for the medications being prescribed. Fireman's

11

Fund also had an independent insurance expert review its actions relating to the Nichols claim and submitted evidence that the expert found its handling of that claim to be reasonable and undertaken in good faith. Liberty Homes bases its claim that Fireman's Fund mishandled the Nichols claim on the complaints of its executives, but it has submitted no other evidence to establish that Fireman's Fund actions were unreasonable and undertaken in bad faith. Liberty Homes' disagreement with the amount of reserve funds Fireman's Fund requires and with what Liberty Homes' executives saw as Mr. Nichols' continuing drug dependency are insufficient to establish that Fireman's Fund wrongfully refused to discharge its contractual duties in a conscious and deliberate way. Fireman's Fund is entitled to summary judgment on Liberty Homes' claims of breach of contract and breach of the duty of good faith and fair dealing.

## CONCLUSION

For the reasons discussed above, the court GRANTS the summary judgment motion of plaintiffs American Insurance Company and Associated Indemnity Company [docket # 39] on the claims of the complaint and on the claims of the counterclaim. Fireman's Fund is afforded to and including September 24, 2013 to file a properly supported calculation and request for amounts due and owing on the Nichols claim, with Liberty Homes to have fourteen days thereafter to file any objection to Fireman's Fund's submission.

SO ORDERED.

ENTERED:   September 9, 2013

                              /s/ Robert L. Miller, Jr.
                              Judge, United States District Court